## H. L. UNDERWOOD, SUPERINTENDENT PULASKI CORRECTIONAL UNIT

v.

## THERON ULYSSES BROWN

No. 0018-85

Argued September 17, 1985

Decided January 7, 1986

319

COUNSEL

Robert H. Anderson, III, Assistant Attorney General (Gerald L. Baliles, Attorney General, on briefs), for appellant.

Dutton Olinger, for appellee.

OPINION

**BAKER, J.**—H. L. Underwood, Superintendent of Pulaski County Correctional Unit (Commonwealth), appeals from the December 4, 1984, order of the Montgomery County Circuit Court (habeas court) which granted the November 10, 1983, petition for a writ of habeas corpus of Theron Ulysses Brown (petitioner). The order granted the Commonwealth leave to retry petitioner within sixty (60) days.

The habeas petition alleges that petitioner received constitutionally ineffective assistance of counsel during the proceedings surrounding his November 4, 1981, trial in Montgomery County Circuit Court upon an indictment charging him with a May 30, 1981, rape. Petitioner was tried by a jury, which found him guilty and recommended a twenty (20) year prison term. On January 5, 1982, following consideration of a presentence report, the trial court entered judgment in accord with the jury's

recommendations.

The Commonwealth presents two issues on appeal: (a) whether the habeas court erred in granting the petition based upon the cumulative effect of trial counsel's actions, while finding that petitioner failed to prove that any specific act or omission of trial counsel constituted ineffective representation; and (b) whether the habeas court erred when it allowed petitioner to impeach trial counsel's plenary hearing testimony with evidence of alleged prior inconsistent statements.

On January 26, 1984, petitioner, by counsel, filed the petition and a supporting memorandum of fact and law. The petition alleged the following seven specific instances of deficient trial counsel performance:

(1) Trial counsel abandoned petitioner after filing for an appeal to the Supreme Court of Virginia.

(2) Trial counsel failed at trial to introduce substantial corroborative evidence on petitioner's behalf.

(3) Trial counsel failed to move to set aside the jury verdict.

(4) Trial counsel failed to request that the trial court give the jury a cautionary instruction regarding accomplice testimony.

(5) Trial counsel failed to attempt to negotiate a plea agreement.

(6) Trial counsel failed to fully advise petitioner of the alternatives available to him in entering a plea and the consequences of each alternative.

(7) Trial counsel failed to save his exceptions at trial by making them a part of the trial record.

On March 15, 1984, the Commonwealth filed a motion to dismiss the petition. It was supported by factual and legal argument; by a March 7, 1984, affidavit of J. Patrick Graybeal, the Montgomery County Commonwealth Attorney who prosecuted petitioner; and, by a February 28, 1984, affidavit of trial counsel.

Trial counsel's affidavit refuted petitioner's allegations relating to negotiation of a plea agreement, the advice given to petitioner regarding his plea and its consequences, and the form of trial.

On August 6, 1984, the habeas court heard arguments upon the dismissal motion. Following the hearing, the court dismissed petitioner's claim based upon trial counsel's alleged failure to introduce corroborative evidence, and the alleged abandonment of petitioner's appeal. The court ordered a plenary hearing to consider the remainder of petitioner's allegations.

The plenary hearing commenced on August 31, 1984. Robert C. Viar, Jr., therein represented petitioner. Viar was the same attorney who assisted petitioner in the preparation and filing of the petition, and who represented petitioner in his unsuccessful attempt to appeal his conviction in 1982 on the basis of ineffective assistance of counsel. At this hearing, petitioner presented the testimony of three witnesses: J. Patrick Graybeal, trial counsel, and himself.

During the August 31, 1984 proceedings, the habeas court dismissed petitioner's claim based upon the allegation that trial counsel failed to move to set aside the jury's verdict upon its finding of guilt. The dismissal of this claim was done without objection by petitioner as the trial record showed that trial counsel had made such a motion and that the motion was denied.

At the close of the August 31, 1984 hearing, Viar moved the habeas court for leave to withdraw as petitioner's counsel, to continue the case for a time, and to be allowed to testify as to alleged statements made to Viar by trial counsel during an April 1982 telephone conversation, which were inconsistent with trial counsel's testimony at the hearing. The habeas court granted the motion over the Commonwealth's objection, appointed substitute counsel, and rescheduled the hearing.

The habeas court resumed proceedings on October 18, 1984. At the hearing, the habeas court heard Viar's testimony regarding trial counsel's alleged prior inconsistent statements. At the conclusion of the hearing, the court addressed petitioner's four remaining allegations and found that no one of them merited a finding of ineffective assistance of counsel. The court did express serious concern about whether trial counsel should have requested a cau-

tionary instruction on accomplice testimony.

The court then proceeded to explain its view of the case:

I've got to look at this case as a picture, as a whole. In other words, I've got to look at the four corners of this entire trial. . . . In considering all of that and what the Court knows about this case and has heard, gentlemen, I'm of the opinion, and so hold, that the writ should be granted and I will grant same, saving exceptions.

On December 4, 1984, the habeas court entered its order granting the petition, which stated in part:

After hearing evidence and argument by counsel and after consideration of the pleadings submitted on behalf of both parties, the Court is of the opinion that the petition should be granted on the ground that while no one allegation is sufficient to demonstrate ineffectiveness of trial counsel, unless the failure to offer an accomplice instruction would be such, *the totality of the circumstances in this case demonstrate that petitioner did not receive constitutionally adequate representation.* (emphasis supplied).

I.

As noted above, the habeas court early on dismissed three of the seven original grounds contained in the petition. Thereafter, the court heard evidence upon and considered the four remaining allegations to reach its ultimate decision. We now consider each of those four remaining allegations to determine whether petitioner suffered ineffective assistance of counsel during the pendency of his 1981 trial.

In *Dillard* v. *Commonwealth,* 216 Va. 820, 224 S.E.2d 137 (1976), the Supreme Court of Virginia considered when a cautionary accomplice instruction is appropriate:

It is clear . . . that cautionary instructions should be granted when accomplice testimony is uncorroborated and that they should be refused when such testimony is corroborated.

*Id.* at 822, 224 S.E.2d at 139; *see also Allard* v. *Commonwealth,* 218 Va. 988, 989-90, 243 S.E.2d 216, 217 (1978).

At trial, the Commonwealth presented testimony from one of petitioner's purported accomplices. The accomplice, a juvenile, testified to rebut petitioner's trial testimony. The accomplice first established petitioner's presence and participation in events prior to the victim's rape as she walked to her home from a tavern. He then stated that he witnessed petitioner have sex with the victim while in her home. The accomplice admitted that he, too, raped the victim.

Petitioner had testified at trial and admitted his participation in events occurring as the victim traveled toward her home. He also admitted being with the accomplice at the time.

The victim not only described certain events prior to and during the rape consistent with the accomplice testimony, but also positively identified petitioner as one of her several assailants.

The trial testimony of the victim and petitioner amply corroborated the accomplice testimony. On that basis, petitioner was not entitled to a cautionary jury instruction. Therefore, trial counsel did not ineffectively assist petitioner by failing to proffer such instruction.

At the plenary hearing, petitioner explained that prior to trial he met with trial counsel several times and attended his preliminary hearing, where the seriousness of his charge was impressed upon him. However, he denied that trial counsel ever discussed the possibility of a plea agreement with him, discussed plea alternatives with him, or counseled him whether a jury trial or trial before the court would be most advisable. He was certain that trial counsel informed him that upon a jury's finding of guilt, the trial judge "would set aside the verdict and I'd likely probably be placed on probation."

Upon cross examination, petitioner admitted that throughout the proceedings he steadfastly maintained his innocence of the charge to trial counsel. He stated further that he felt optimistic of an acquittal by the jury.

Both Graybeal and trial counsel, while recalling no specific conversation, remembered contact between them on the issue of peti-

tioner's plea. Graybeal acknowledged receiving information that petitioner denied the charge against him. He explained that due to the facts and circumstances of petitioner's case, he would have recommended no less than twenty (20) years imprisonment upon a guilty plea.

The minimum recommended sentence upon a guilty plea acceptable to Graybeal matched that which the jury recommended and the trial court imposed. Trial counsel's plea negotiation effort, anchored by petitioner's insistence upon his innocence, did not adversely affect petitioner's interests in any way. We hold, therefore, that trial counsel was not ineffective in this regard.

Trial counsel cited numerous talks with petitioner on an appropriate plea at trial and the potential consequences. He added that much information on this topic and others was given to petitioner to ensure that he understood them. The discussions occurred within the context of petitioner's claimed innocence.

Trial counsel denied a failure to discuss with petitioner the merits of a jury trial versus a trial before the court, and further denied speculating to petitioner about what action the trial judge would take respecting a jury's recommended sentence. To the contrary, counsel stated that he explained petitioner's options to him, and the possible consequences thereof. Petitioner ultimately opted for a jury trial based upon his belief that one or more jurors would believe him.

We note that trial counsel's version of events relating to his pretrial advice to petitioner is bolstered by petitioner's admission that he met with trial counsel several times. Petitioner, in effect, asks the court to believe that the several conferences were literally void in content. We decline to do so.

Petitioner's complete denial of guilt created a situation in which the only viable alternative was for him to plead not guilty and be tried. In light of these existing circumstances, trial counsel was left with no alternative but to try the case on a not guilty plea, and he could not be considered ineffective for taking that course of action.

The final claim which petitioner asserted is based on an allegation that trial counsel failed to save exceptions in the record. However, throughout the proceedings in the habeas court, peti-

tioner failed to cite any specific instance occurring at trial to support this allegation. Therefore, we find this allegation wholly without merit.

 *Strickland* v. *Washington,* ___ U.S. ___, 104 S. Ct. 2052 (1984), sets forth the legal standard by which a court must evaluate a claim of constitutionally ineffective assistance of criminal defense counsel:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
>
> * * *
>
> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant a fair trial, a trial whose result is reliable.

*Id.* at ___, 104 S. Ct. at 2064.

Our examination of petitioner's specific allegations of ineffective assistance of counsel leads us to conclude that petitioner has failed to show either serious trial counsel error or prejudice to his cause. This conclusion precludes any inference that trial counsel's representation of petitioner "fell below an objective standard of reasonableness." *Id.* at ___, 104 S. Ct. at 2065.

Hence, we disagree with the habeas court's conclusion that the circumstances of this case warrant a grant of the petition based upon the cumulative effect of trial counsel's conduct. This theory was neither pleaded nor proved upon this record.

II.

 The Commonwealth also complains of the habeas court's decision to allow Viar to testify about trial counsel's alleged prior inconsistent statements. What effect, if any, this testimony had upon the decision of the trial court is not clear; however, it is clear

that Viar should not have been granted leave to so testify.

The procedure whereby a litigant may impeach a witness whom he has called is prescribed in Code § 8.01-403:

> A party producing a witness shall not be allowed to impeach his credit by general evidence of bad character, but he may, in case the witness shall in the opinion of the court prove adverse, by leave of court, prove that he has made at other times a statement inconsistent with his present testimony; but before such last mentioned proof can be given the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and he must be asked whether or not he has made such statement. In every such case the court, if requested by either party, shall instruct the jury not to consider the evidence of such inconsistent statements, except for the purpose of contradicting the witness.

At the plenary hearing, trial counsel testified in conformance with his affidavit, filed March 15, 1984. This filing was over five months prior to the hearing. Viar could not reasonably claim surprise and the fact that the trial counsel did not recall the specifics of a 1982 telephone conversation carried no probative value. If the testimony is negative in character and of no probative value to the fact finder, there is no statutory basis for impeachment. *Virginia Electric & Power Co.* v. *Hall,* 184 Va. 102, 105-06, 34 S.E.2d 382, 383 (1945). Nor is impeachment allowed if the witness' testimony simply fails to meet the litigant's expectations. *Id.* at 106, 34 S.E.2d at 383.

Finally, Viar at no time confronted trial counsel with the specific statements he allegedly made. The statute clearly requires that this foundation be laid. *Id.* at 105, 34 S.E.2d at 383; *Epps* v. *Commonwealth,* 190 Va. 93, 100, 56 S.E.2d 237, 240 (1949).

Accordingly, the December 4, 1984, judgment of the habeas court is reversed, and the petition for a writ of habeas corpus is denied.

*Reversed.*

Koontz, C.J., and Moon, J., concurred.